Resume with Pristine Pools v. Hartford Fire Insurance Company number 25-1679 Mr. Levikoff. Good morning. Request three minutes for rebuttal.  Thank you. Your Honor's Edward Levikoff here on behalf of the appellants Pristine Pools LLC and Jonathan Mihalik. Christine and Mr. Mihalik filed this action as a breach of contract action arising out of the defendant insurance company Hartford refusal to defend them in an underlying property damage case. Hartford and the court below are of the view that where the insured's work, defective work is involved in the causal sequence of events leading to loss. That's it. Across the board, no coverage, no ifs, no ands, no buts. They don't want to pay for faulty workmanship. Well, it's actually the problem is that the Hartford's view and the court below's view is much broader than that. It's that they don't want to pay for faulty workmanship, but they also don't want to pay for bodily injury or property damage caused by faulty workmanship. And there's no dispute because all we're dealing with is the four corners of the underlying complaint and the four corners of the insurance policy. There's no dispute that what's alleged in the complaint below is that Pristine contracted to install a swimming pool and in so doing installed a bad swimming pool. But also, there's a negligence count for damage to not only the pool that Pristine built, but negligently caused damage to surrounding property, which nobody disputes Pristine did not build. But if the faulty performance is what caused the damage to surrounding property, I mean, haven't we crossed that bridge with Kavner and then the Pennsylvania Supreme Court? And then our cases, SAPA, the cases that have followed, that have echoed the notion as long as there is the other property damage ties back to the faulty workmanship and not some intervening cause or defective product, that there is not coverage. It's not an occurrence. It's a great question. It's what I was hoping we would get to. I was going to start talking about it if you hadn't asked, but I'm glad you brought it up. Short answer is no, we have not crossed that bridge. Kavner dealt with a very contained subject matter where the damage alleged is to the work itself. That's all Kavner dealt with. Kavner did not deal. So let's stop right there. Sure. That's Kavner. They were constructing something for Bethlehem Steel. Okay. And it's a faulty workmanship case. Would you agree?  Okay. Here, your clients are, they enter into an agreement to build this swimming pool. Correct. For Bridgewater. Yes. All right. Now, what's a swimming pool? What is it? What is a swimming pool? Yeah. Well, this was an in-ground concrete pool. In-ground concrete pool. So you dig a hole, right? Yes. I never built one, but you dig a hole. Nor have I. Okay. You put up the walls on four sides. You put a floor down. You seal it. You do some other things. That's what your client was, agreed to build, right? More or less, yes. More or less? Yes. How does that differ from converter? Because here, the complaint and the underlying action isn't just limited to the cost of redoing the pool. That's the precise distinction. Here, the complaint alleges a claim for redoing the pool, but also damage to the surrounding property. Okay. So we, you know, one thing, this is an interesting case, but this is a typical insurance case. We have to look at the underlying complaint. Absolutely. Okay. The underlying complaint was filed by Bridgewater. Yes. In a court of common pleas in Allegheny County. Yes, that's right. Okay. The pool is in Beaver County. Yeah, it was not in, I couldn't figure, as somebody from the Pittsburgh area, I couldn't figure out how, but they agreed to go to Allegheny County. But it's only surrounding property. This surrounding property that you're trying to argue to bring in is mentioned in two different paragraphs. And paragraph 141C and 142C. That's correct. It's all it mentions, surrounding property. That's right. Okay. Isn't it conceivable that what they were referring to was the property that immediately abuts the concrete structure, which is the pool? It's a great question because the decision below, and this gets to the point that Judge Krause was after, haven't we crossed this bridge? And we haven't. And I'll tell you why. The decision below operates in a vacuum. It doesn't take account of where we are in this case. Where we're talking about is a duty to defend. Now, a couple principles of well-settled Pennsylvania law, which do not appear in the court's three-page opinion. There's actually two pages in text because she just summarily says no coverage. A couple well-settled principles of law that you have to keep in mind. One, the duty to defend is much broader than the duty to indemnify. Okay. Number two, if there's even one claim, even one that's in the case that could even potentially be covered, there's a duty to defend. Now, I will grant you that the claims in the case, the bulk of the underlying case, is for damage that there wouldn't be coverage for. I will grant you that. But we're not talking about the ultimate duty to indemnify. We don't even know if Pristine's going to be liable yet, let alone on what basis. But what I'm saying to you is, if there's even one claim in the case that even potentially could be covered, the law says there's a duty to defend. And what the court below did is it ignored that. Now, Judge Krause, you asked about prior Third Circuit law. The court below said none could be stronger authority than the Berkeley specialty case. And something, we distinguished Berkeley specialty in our briefing, but something that I would like to get into an oral argument because I don't think we hit upon it. It's also an NPO, isn't it? It is. Non-published. Yes. Yeah. Why don't you talk to us instead about our precedential opinions, in particular SAPA extrusions, where we talked about any distinction between damage to the work product alone versus damage to other property is irrelevant so long as both foreseeably flow from faulty workmanship. And that's the key. Or specialty services international versus continental casualty company, where consequential damages resulting from faulty workmanship. We addressed whether consequential damages resulting from faulty workmanship resulted in occurrence under the general commercial liability policy and concluded that it did not because it was foreseeable. Sure. Right. And the other cases to which you pointed us for support all involve some either intervening event or an active malfunction, something that involved a product defect, which is not alleged here. So why aren't we bound by our own precedent that already addresses how to handle other property where it appears on the face of the complaint and that it's a reasonably foreseeable result of faulty workmanship? Short answer is because this case is different. And here's why. Number one, it arises in the context of a duty to defend, not the duty to indemnify. So you agree there's no duty to defend if there's no occurrence? Absolutely. 100 percent.  And we're dealing with a definition of occurrence which requires an accident, which requires that it be by fortuity and not foreseeable from faulty workmanship. I don't think I would go as far as saying that foreseeability should enter into it. But I do think that under Kverner, fortuity certainly is the pole star of the court's inquiry. And it's the pole star of the court's inquiry by looking at the allegations of the underlying complaint. Now, this case is different because this court, the Third Circuit, has never addressed this issue in the situation of I'm building something here, a swimming pool here, and it causes damage to other property by virtue of negligence over there. Yeah, but you're pointing over there. I pointed to the ground abutting the concrete structure. Yes. Surrounding property. There's no... I'm looking at maybe the narrowest definition of surrounding property, but it looks to me that it's so much related to the work that it's directly caused by the faulty workmanship. And I will grant you that if there were allegations in this complaint that Bridgewater said, when you built this pool, you knew full well that if you did a bad job, it would have damaged this property. I would grant you, if that were the case, we'd be dealing with a different case. But that's not what's alleged. This case was decided by the district court at summary judgment, was it not? It was either summary judgment or motion for judgment on the plea. No, I think it was a summary judgment. Summary judgment. I mean, we don't have anything in the record here to support what you're arguing. I mean, you know, why weren't there some depositions taken to determine, you know, what the complaints were about this swimming pool and the workmanship? So it's a duty to defend case. It's determined on the basis of the four corners of a complaint versus the four corners of the insurance policy. The only reason it was summary judgment is because we attached a declaration of the policyholder saying, here's the policy. That was the only, it was filed immediately after the plea. There's nothing to say you can't take depositions, even though the case law may talk about the four corners law. Well, the depositions really would be inapposite to whether there's a duty to defend, because the duty to defend is determined by the allegations of a complaint. Could have gotten into this question of what the surrounding property was that they were alluding to. Again, that would not inform the duty to defend. That may inform the ultimate duty to indemnify. And to answer your question, to go there, you're saying if there's any allegation in the underlying complaint that raises a question that you might have an obligation to indemnify, you then have a duty to defend. That's exactly what I'm saying. You're right on it. It's not only what I'm saying. It's what the law says. What's your best case to support that? There are any number of them. Jerry's Sports Center is one of them. The Third Circuit decided the Frog Switch case that says that. The Kverner case itself says that. I mean, we cite these extensively in our briefs. I don't even know that there's any dispute from Hartford that that's the standard. What Hartford and the court below find is that where there's faulty work involved in causing the loss, there's no coverage. That's just not the law. To bring up, I know we're going back five minutes, but to bring up the Sapa case that you brought up, Sapa was a different question. Sapa involved extrusions that were incorporated into an overall product. And what this court found is, well, when you manufacture a product and it's defective, it's not an accident that it damages the overall product into which it's incorporated. In other words, this court on several occasions has decided that where the circumstances are such that you can tell from the record alone, right, that there's no accident because there's not a degree of fortuity involved, then there's no coverage. And the mere fact that there's other property damage isn't in and of itself enough. And I'm not standing here telling you otherwise. I'm not telling you that the mere fact that there was other property damage in and of itself means that there was an accident. That's what was rejected in prior Third Circuit cases. That's not the law. What the law in those prior cases is, is where the circumstances are such that the court can reliably tell with certainty that there's no accident because there's no fortuity. Like you manufacture an extrusion, it gets incorporated into a window to take the facts of SAPA, and it fails. And okay, there's no fortuity that it damages the window beyond merely the extrusion that the insured manufactures. But this isn't that case. And the fact that the surrounding property may have been close to the pool is of no moment. It's other property beyond the insured's work. It's in the court's opinion. She says, she notes the allegation of the complaint. Hey, there's a negligence cause of action. Well, she may not say that, but she says it damages other properties surrounding property. She just makes no moment of it. But look, let's look to the four corners of the complaint here. Yes. Because it's not just surrounding property period, right? Paragraph 141C talks about damaging, raking, and or fracturing the pool and surrounding property as a result of the negligent construction. Yes. So it's alleged in the underlying complaint, in the four corners of the complaint, that the damage here derives not from any other source, but from the faulty workmanship. Correct. And I understand the four corners rule. It puts insured's in quite a bind because you have no control over what that underlying complaint pleads, right? It's fine. But the Pennsylvania Supreme Court has said and has been strict about limiting what we're to look at to the complaint. And the allegations of the complaint here tie back to the result of negligent construction. So where it's said there explicitly, how could we infer that there is the potential for something else to be the cause without purely speculating? The four corners rule is designed to do the precise opposite. It's supposed to put the insurer at a disadvantage and favor coverage. And to answer your question, it's a great question because it begs the ultimate point. The reasoning adopted by Hartford and the court below would endorse this view. If I'm building a pool here and as a result of my faulty construction, I injure someone standing next to the pool. I injure, I swing a crane because I do it defectively and I hit him in the head and I injured him. That's not covered because they all flow from faulty workmanship. That is the broad based rule that the lower court adopted that this court cannot adopt or at least should not adopt that broad based rule without at least seeing what the Pennsylvania Supreme Court has to say about it. Well, so on that, so tell us, OK, so you would have a certify the question. I actually don't think you need to, because again, I think if you look at the Third Circuit precedent, it arises in different contexts in duties like the specialty, the Berkeley case that she relied on below arises in a duty to indemnify after a judgment on a fraud count. For if you look at the Berkeley case, it arises out of a there's a Pennsylvania Superior Court decision called Erie versus Wilton. What that case dealt with is whether there was indemnity, not a duty to defend indemnity, which is much narrower. It takes account of the actual evidence in the case and the outcome of the case. And it was on a judgment for an unfair trade practices and consumer protection law claim for fraud. OK, thank you. Along that along that line. And I know your time is up, but it seems to me that you're two best cases from Pennsylvania. To help us predict what the Pennsylvania Supreme Court would say if this case were there or in the Lex and Pottstown, would you agree with that? I would. I don't think this is that those cases either to be quite candid with you, but I do think there. I mean, if you're looking for something, those are the two two best, I would think. One of the problems I see is that our decision in Sapa, Judge Krauss reference, was decided after both of those cases were decided. OK. And. So. As a panel of the Third Circuit, are we able to disagree with Sapa? You don't need without going in back. So you don't need to because this case is different than Sapa. This isn't the incorporation of a defective component into an overall product. This is I'm building a pool here and I damage property over there due to negligence. It's a completely different case that the lower court's opinion was not mindful of at all. The lower court's opinion was essentially if you allege defective work causing damage, it doesn't matter where, when, how, why, because of what. It's just not covered. And if you adopt that rule, nobody will buy insurance if it doesn't cover a commercial enterprise for anything that arises out of its work. What does it cover? OK. I hear from you in rebuttal. Thank you. Thank you very much. Morning, Your Honors. I'm Ronald Schiller. I represent Hartford. I'm going to begin by addressing some of the questions that Your Honors addressed to the appellant. First off, to set the stage, we're not just dealing with Coverner. We're also dealing with a presidential Superior Court case called Miller's Capital versus Gambone. And that was the Superior Court case that extended expressly Coverner to other property. And that was a 2007 case. Then came CPP in the Third Circuit in 2009. Then came Specialty Surfaces in 2010. Then SAP extrusions in 2019. Berkeley, non-presidential in 2023. And American Home versus Superior Well in 2023, which Judge Krause is on the panel on. And they're all cases that followed Coverner and Miller's Capital. And they all applied the same rules. Mr. Schiller, here's what seems like the really hard and perhaps potentially most interesting problem here. And that is that those were all cases that were the underlying complaint alleged sufficient detail. That you knew which property, surrounding property or other property that the court was considering. And where you could rule out other causes because of the nature of the damage caused to the initial product or service itself. So where there's real silence and let's put aside for a moment the language of the policy. And if it's specific enough to tell us that this flows from faulty workmanship. If there's silence in a complaint as to what that other property is or the nature of the damage and how it occurred. What's the default rule? Should it be that the damage to property other than, where you have damage to property other than the property that's insured. That and you have a complaint where you can't identify the intervening cause. Or that you can't rule out that there was an intervening cause. Which is the right default to think about this under Kverner and our case law? You start with the proposition that we're bound by the four corners of the complaint. And to be clear, there are states where that's not true. There are states where an insurer is bound by extrinsic evidence but and must provide a defense. If extrinsic evidence supports it, there are almost no states where an insurer can take advantage of extrinsic evidence to deny a defense. Pennsylvania is not one of them. We're bound by the four corners of the complaint. We also have fact pleading here because it's a state court complaint. So we're not dealing with rule four's notice pleading. We're dealing with fact pleading. We have here what comes strictly within the Miller's capital versus Gambone rule of natural and foreseeable acts which tend to exacerbate the damage effect or consequences caused ab initio by faulty workmanship. Also cannot be considered sufficiently fortuitous to constitute an occurrence or accident. So then you look at the complaint. And I'm going to pick up on some of your questions earlier. Paragraph 141 of the complaint, second C. I think there are two Cs. The second C, the only time, you're right, it only mentions surrounding property twice. And it says, as caused by the construction, by the negligent construction. That's it, Your Honor. There is nothing in this complaint that takes it apart from the negligent construction. This is not Pottstown. This is not Indelex. There's no allegation. What about 141E? Which says they were negligent and created an unsafe hazard to the plaintiff and neighboring community. All of this, Your Honor, still ties to the construction. And I believe what they're talking about when they say an unsafe hazard to the plaintiff and neighboring community ties into their other allegations on how the contract was breached. Namely, that the contractor didn't obtain and provide for appropriate permits, used plans that related to a Nevada or other projects. I'm not sure what that, I mean, I'm not sure what that refers to. But it's under the count six, which deals with negligence. All those specialty surfaces says, Your Honor, that it doesn't matter whether it's called negligence or contract. And everything, in other words, it's the same rule of Coverner and Miller's Capital. But in addition, Your Honor. You know, you cited Miller's Capital and I had to do a double take on Miller's Capital a second. Miller's Capital is a Pennsylvania Superior Court case.  That puts us into the world of prediction and looking at Miller's Capital. Miller's Capital is still cited, Your Honor. Miller's Capital is. I'm not saying it's not cited. I understand. I understand the process, but. The other. It just seems to me. Counsel said, why would anybody buy a GCL policy? They're asking for a duty to defend. And there are these claims in here, which, which they're, you know, the Pennsylvania law talks about the four corners. But these are within the four corners. And there's, there's maybe some ambiguity. But where does the ambiguity, where does the ambiguity weigh in on the insured side? Well, I, with all due respect, Your Honor. I think the ambiguity that you raised is removed by the other allegations in the complaint. So when you look at all the factual allegations, remember fact pleading under Pennsylvania law. You have to look at paragraphs 43 that talks about the numerous and significant material defects associated with the pool's construction. The pool itself, the pool's cosmetic appearance, and it talks about them. It talks about the fact that the purchaser of the pool paid $710,000, wanted it back. And what did the purchaser want? They didn't allege damages like in Pottstown or Indelex or any of the other cases that they rely on from other jurisdictions. They wanted $770,000, the cost of a new pool. And you can read all of the allegations here, which tie completely to the cost of a new pool. And that's also taken into account. And this goes to questions relating to the SAPA standard and going back to Caverner as to what is foreseeable and what is adjacent. You really can't get much more foreseeable and non-fortuitous than this. All they're alleging is that a pool that leaked, and by leaked I mean it lost its water within a few days of being filled with water. I mean, that's not exactly fortuitous. Like a roof that lets the rain in, right? Well, it depends, Your Honor. There are roof cases that let the rain in, and then there are roof cases where there's an intervening flood that damages a third party product. And that's what they're suing for. Let me ask you a hypothetical about a pool. Do you know what an ionizer is? I've heard the term, but I don't. Okay, an ionizer is, I think it's described as something that makes sure that the pool is safe to be in. So someone who builds a pool would logically have to install an ionizer. Okay. It's a product. It's supposed, part of this allegation was that the ionizer malfunctioned because of faulty workmanship. Would that be covered? I think there can be a circumstance where an ionizer or the pump malfunctions and electrocutes somebody where it would be covered. Yes, Your Honor. That's not what's alleged here. But yes, and the other thing I'll mention in that connection. Which case would you say would provide coverage for that? What would get them, if that were part of the underlying complaint, what case would get them over the hump in interpreting Pennsylvania law? Where a component part manufacturer possibly that provided the ionizer to the manufacturer that installed it, or the pump that malfunctioned and killed someone, where it's alleged that the component did that. I think that, frankly, comes closer to the situation and may trigger coverage. The other thing I'll mention is that there are policies that are made for contractors. There are contractors' policies that provide E&O or professional liability coverage and provide for damage that arises out of contract for things that a GL policy would not. Another situation that this policy would cover that is not bound with the contractor, the negligence tied to the contract performance, would be something like, and this was where the facts were another case, that totally apart from the contractor, the contractor removed things that were not anywhere near where he was supposed to be doing the job. A concrete pad, a chimney. That would be covered by a GL policy. And indeed, one case so held. That's not what's alleged here. Fact pleading. The only thing alleged are surrounding. And the only places we're surrounding is alleged, Your Honor, because they agree with us that Kaverner covers even your point on, I think it was subparagraph E. Kaverner would cover that unless they argue it reached surrounding property. The only paragraphs that mention surrounding property specifically tie it to negligent construction. What if we can't tell from the language that Judge Fischer was quoting? Something is creating an unsafe hazard to the plaintiff and the neighboring community. You've posited that that could have just been referring to a permit or license. But in a case where we can't tell from the face of the complaint, whether it's referencing something that would involve an intervening cause, why isn't that a sort of quintessential potential fortuity? Because, Your Honor, I respectfully submit all of the cases that have identified the intervening, the flood or whatever it was, a malfunction of a component part, have identified them in the complaint. In other words, this would be boundless to say that a reference that does not even refer to surrounding property, but refers generally to damage to the community, could involve an intervening act that's treated as a separate occurrence. That was the flood case in Pottstown. There is no allegation like that. You would only, I respectfully submit, be speculating to find one, and it would be meaningless to do so. But the cases that do find intervening circumstances say what they are. And frankly, I would respectfully submit that this case is essentially controlled not by SAPA, although the rule of SAPA controls it, but by specialty services, which was a 2010 case that involved the issue of what is Pennsylvania law versus California law. So the court had to reach the law and determine what it was in 2010. Because if it were like California law, then the Shasta School District had sued for not only the Sprint Turf, artificial turf defect, but the substrate damage and everything else, which is very like this, because we don't know what they said, but we know they said surrounding and they didn't put any damages to it. But it's very like this. The court, one, had to conclude that the law was different and that Pennsylvania didn't reach the surrounding surface. And two, that it mattered. It was a real conflict. And three, the choice of law. But again, the complaint pleads with specificity what the property is, the other property that's damaged. And so you can infer from what is there on the face of the complaint that it ties back to the faulty workmanship and not something else. Here, the complaint is so vague. It doesn't identify what the property is. It doesn't identify the nature of the damage to the other property. It does make the kind of conclusory statement that it's resulting from the negligent workmanship. But in the absence of that sort of specificity, I mean, in the normal course, we construe policies in favor of the insured. Should a rule like that apply here? So that the default, when you can't tell from the face of the complaint if there's an intervening cause or not, then there is coverage. But they don't, I respectfully suggest, Your Honor, no, they have to allege an intervening cause. There is nothing to suggest an intervening cause. In the cases that have found an intervening cause, whether it's a flood or a product malfunction. What about Pottstown? Pottstown was a flood. Pottstown, and they refer to it, Your Honor, as an intervening, superseding flood. It was a flood that caused the damage to the product in the industrial center. And it's been distinguished by the Third Circuit on that basis because Your Honor was right. It was rain, was it not? It was flooding caused by some sort of heavy rainstorm, yes, Your Honor. But the court... Okay, which it seems to me that the claim was that the roof was faulty and it didn't protect the property from rain. Well, the courts specifically, every court that discussed Pottstown, and remember, you were correct, Pottstown actually preceded the SAPA case by a few months and has been considered and discussed by other courts. But every case that has discussed Pottstown pointed out the allegation of an intervening cause that was a flood at which this complaint doesn't do at all, Your Honor. And I'll also point out the obvious difference that, yeah, a roof is exposed to elements which include rain and may even flooding rains. But that's not what you have here. You have a pool that's built to hold water to allow people to swim in it. Right, a pool to hold water and a roof to keep water out. Yeah, but there is no allegation here of an intervening, superseding cause whatsoever which is the basis on which Pottstown has been not ruled to be wrongly decided but distinguished by every single court. Okay, if we disagreed with you that Pottstown was broader than what you're arguing that it is, okay, in light of our decision in SAPA and specialty which you cite, can we as a panel make a prediction that because of Pottstown, the Pennsylvania Supreme Court would hold that there's a duty to defend here? No. We as a panel. I mean, no, Your Honor, and I know you're aware of this and I have to say this gingerly, but you're bound by the precedent, we believe, and we've argued that, that it's not one case, it's several cases that we think that you respectfully should obviously follow it. We are not saying Pottstown's wrongly decided. We're saying that it shouldn't apply. But I know that's not your question, Your Honor. I respect that. But even if you decided that the way the other cases, both precedential and non-precedential, have distinguished Pottstown is wrong and that it properly predicts Pennsylvania Supreme Court law even though the Supreme Court has not deemed it necessary to accept appeals from the state court's superior court decisions, non-precedential and precedential, that have followed Miller's capital since 2007. But likewise, they denied cert in the cert petition in Indilex. Yes, but as you know, Your Honor, Actually, you could infer from that that they felt that Indilex was properly decided. There are actually cases, as Your Honor knows and says, you can infer that from taking or not taking. What I was saying was not that you can infer that they haven't taken it from all those cases that they agree, but that there have been ample opportunities for the Supreme Court to take up this issue and it hasn't. And frankly, Your Honor, I know I'm out of time and didn't really get a chance to discuss the standard for certification, but I will remind the court that this court all, you know, it's part of its jurisdiction. It interprets the law of states and predicts what the Supreme Court will do all the time. What you have to do that with now is Coverner and the rule of Coverner, which we respectfully submit, was faithfully applied in not only Miller's capital but the other cases. And the only other thing I'll point out is it's rare. I mean, until 2013, the Third Circuit didn't even have the right to ask the Pennsylvania Supreme Court to take a case on certification. So, just on that, since you've raised the question of certification, so you do not think that even though you're relying heavily on citing Miller's capital, which is not a Pennsylvania Supreme Court case, that even that means that it wouldn't be helpful to certify the question? I don't think it would be and I also think that it's very unlikely the Supreme Court would take it, even if this panel decided or an en banc decided it should. And I would just point out without citing the standard, which I know is known to all three of you, that as recently as Friday in the Massey case, this circuit interpreted a New Jersey statute to pass upon an unresolved state law matter. Our task is to predict how the highest court of that state would decide the relevant legal issue. That is our job in this case. Although the Supreme Court of New Jersey has not yet had occasion to address Ames, we predict the court would rely on Ames to conclude the state's background circumstances rule no longer has a permissible role to play. It invalidated a state statute without even sending it to the state of New Jersey. Now, Your Honor, and that's the Massey case from Friday, I'm not going to comment on why the court decided not to send that to the New Jersey Supreme Court for decision. This doesn't involve a state statute. It involves dozens of cases in state and federal court. We've discussed maybe a dozen of them today. This case does not plow new ground because even the two references to surrounding property are tethered to negligent construction. I think this would be an odd case indeed to go to the Supreme Court at this point. But none of those cases had the silence, the ambiguity about the identity of the property and the nature of the damage to that property such that you could say on the four corners that you can't rule out there being an intervening cause. And if we think of that as the default applying the general rule that when we're looking at coverage, if there's that ambiguity, it's going to be construed against the insurer, then wouldn't the right application of Fairner and these other cases be when you can't rule that out then you have an occurrence. There's a duty to defend. But there has to be a factual basis for ruling it in, Your Honor. So my pushback on that is that I don't think that's an ambiguity. I don't think there's anything there in the facts that support the argument that the damage to surrounding property, which is necessarily tied to negligent construction, which falls directly into the line of cases below in terms of determining what's fortuitous. But what you're really saying is, but if it doesn't say for sure, alleged facts to support the cause of the damage to surrounding, but I say it does because it ties it, as Your Honor asked, to negligent construction. It rules out that there was an intervening explosion or that there was an intervening rainstorm. All these other things. If you can say that silence means ambiguity, I think it becomes an untethered exercise and it's not supported by the case law. Thank you. One thing I'm not going to address is the Massey case that was reported two minutes ago and I'm not familiar with it. What I can address is the Gambone decision or Gambone, however it's pronounced. In that case, it was all the insured zone work. The case is not opposite. I mean, the case basically is Kaverner and all the Gambone court was deciding was whether an event like rainfall, which happens many days, including unfortunately today, all Gambone court decided was whether rainfall takes a non-accident and makes it an accident. It said that it doesn't. Subsequent courts, like Specialty Services and CPB, just followed suit over that. They said that if you build something and you can reasonably anticipate that if it rains, it's going to cause damage, that's not accidental because we all expect, unfortunately, rain to fall at some point or another in our lives. Let me ask about our certification standard because we've spoken to that in De Freitas, a case that you don't grapple with to any extent in your briefing. One of the things we pointed out there is that if a party waits to request certification until after they've lost in the court below, that we don't look well on the application brought up for the first time here. Aren't we in that situation? I can't say I'm familiar with the case or its reasoning. All I can tell you is that I don't believe that I really don't believe that certification is necessary to find for the insured in this case. But you asked for it. What's that? Didn't you ask for it? In the alternative. Here's what I think. What I think is, and what I'm going to submit to you is, if you look at the federal cases that the lower court relied upon, they're highly distinct. They arise in the duty to indemnify context under circumstances where you can reliably determine there was no fortuity, such as component parts of an overall whole or an unfair trade practices fraud claim. And I don't think this court or the court below needed to grapple with any of that because this is not that case. But what I will say is that the lower court evidently felt bound by what it interpreted to be a broad rule of law that the Third Circuit has espoused that it misinterpreted meant that anytime there's defective work in the causal chain of events there's no coverage, no ifs, ands, or buts. Now, no prior court has ever remotely held to that effect. If you examine those cases, they are totally distinct. They do not hold that way. They do hold that the mere fact that other property is damaged isn't in and of itself doesn't in and of itself make it an accident where it otherwise isn't. They do hold that way. But that's not Christine's argument in this case. It's not that the mere fact that there's other property damage makes it an accident. It's that there's a negligence cause of action for damage to surrounding property. And I would like to read because I forget which of you, but one of you asked me, I think Judge Fisher, you had asked me, what's your best case for the proposition that if there's even one claim that's even potentially covered then there's a duty to defend? And I think it's a great question. This is from Penn America v. Peccadillo's 27A 3rd 259 This is a quote. A duty to defend is broader than the duty to indemnify. Accordingly, if there are multiple causes of action and one would potentially constitute a claim within the scope of the policy's coverage the insurer would have a duty to defend until it could confine the claim to a recovery excluded from the policy. And then it quotes from a Pennsylvania Supreme Court the Jerry's Sports Center case as long as the complaint might or might not fall within the policy's coverage the insurance company is obligated to defend. And then I go on to cite Jerry's which quotes the Frog Switch case from this court in 1999 that says the factual allegations of the underlying complaint against the insurer are to be taken as true and liberally construed in favor of the insurer. Under that standard, there is no way to look at the underlying complaint and determine that there's no duty to defend. I realize there may ultimately be no duty to indemnify. I realize that because it depends on if Pristine is liable and if so on what basis. But a defense is its own benefit under the policy. That's why there are two duties to defend and to indemnify. We're only dealing with the duty of defense. And on these allegations, this carrier owes a duty and to find that it doesn't would basically say you're going to issue a policy to a commercial entity and where that entity's commercial enterprise causes damage, no matter where, when, why, or how, it's not covered. Now, the counsel, Mr. Schiller, argued that based on Pennsylvania's fact pleading procedural rules, that you have to read the underlying complaint holistically. And if you look at you can't just look at count six in isolation. You have to look at the factual allegations earlier in the complaint to try to ascertain what they meant by surrounding property or unsafe hazard. What's your response to that? That what he's telling you is that what he gleans if you read the entirety of the complaint together is his interpretation of it is that there's no accident. But that's precisely the opposite standard. You're supposed to read it with giving every benefit of the doubt to the insured. You're not supposed to read it giving the benefit of the doubt to counsel for the insurance company. Okay. Thank you very much. Thank you. We will take the case under advisement and